# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Case No. 1:24-cr-99 (CJN) |
| | : | |
| **JAMES MARTIN,** | : | |
| | : | |
| **Defendant.** | : | |

## UNITED STATES' MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Memorandum in Aid of Sentencing with respect to defendant James Martin. For the reasons herein, the United States requests that the Court sentence the defendant to a period of six (6) months of incarceration, to be followed by three (3) years of supervised release. The United States is not requesting any fines or restitution in this case, other than required court costs. The parties have also agreed, pursuant to the plea agreement, to an appropriate forfeiture order in the amount of $290. In support of this sentence, the United States respectfully states the following.

## FACTUAL AND PROCEDURAL BACKGROUND

In December 2022, law enforcement began investigating a narcotics distribution point located at and around the 100 block of Yuma Street Southeast, Washington D.C. (hereinafter, the "Yuma Block"), as well as a shed in the back yard of an abandoned home, located at 144 Yuma Street Southeast, Washington, D.C. (hereinafter, the "Yuma Shed"). The area functioned as an open-air drug market, with narcotics dealers serving clients who walked up and requested to purchase narcotics. Although some dealers were routinely seen by law enforcement operating in and around the Yuma Block and appeared to be working together to distribute narcotics, other

dealers appeared to come and go at various times. Through the course of the investigation, law enforcement identified some of the individuals operating in and around the Yuma block, including Alphonso Murray, Marquette Murray, Christian Penn, Kevin Simms, Leonard Short, and the defendant, who appeared to work together at various times to distribute narcotics.[1]

Since at least June 2023 until late November 2023, when A. Murray, M. Murray, and Penn were arrested, the defendant was regularly seen in and around the Yuma Block assisting others in the trafficking of narcotics, specifically fentanyl. Specifically, the defendant worked with others to package narcotics into "zips" for resale. For example, on or about November 15, 2023, the defendant assisted Penn with packaging fentanyl into small bags, or "zips," for redistribution behind the Yuma shed, using a worktable also used by A. Murray, Penn and Simms to weigh, package, and distribute fentanyl. On at least four other occasions, the defendant packaged fentanyl into "zips" for redistribution behind the Yuma shed.

On or about January 24, 2024, the defendant was charged by complaint, along with Short, with Conspiracy to Distribute and Possess with Intent to Distribute Fentanyl, in violation of 21 U.S.C. §§ 841 (a)(1), 841(b)(1)(C), and 846. On January 25, 2024, law enforcement executed a search warrant at the defendant's residence, located at 4725 1st St. SW Apt 202, Washington, D.C., where they recovered the following items: (1) $290.00; (2) six scales; (3) four firearm magazines; (4) 47 rounds of 45 caliber ammunition; (5) 99 rounds of 22 caliber ammunition; (6) 91 rounds of 9mm ammunition; (7) one Blu M8L tablet; and (8) 17 cellphones. In addition, law enforcement recovered multiple "zips" containing a white substance, mannitol, and packaging materials

---

[1] A. Murray, M. Murray, Simms, and Penn were charged in criminal case 23-cr-419 (CJN) with, *inter alia*, Conspiracy to Distribute and Possess with Intent to Distribute 40 Grams or More of Fentanyl Mixture, 10 Grams or More of Fentanyl Analogue Mixture, and a Mixture and Substance Containing a Detectable Amount of Cocaine Base, in violation of 21 U.S.C. §§ 841 (a)(1), 841(b)(1)(C), and 846. A. Murray, M. Murray, and Simms, who have all pled guilty to narcotics and/or firearms related charges, are currently scheduled for sentencing on September 6, 2024. Penn remains in fugitive status. Short also pled guilty to narcotics related charges in criminal case 24-cr-122 (CJN) and is currently scheduled for sentencing on July 31, 2024.

commonly used in preparing narcotics for redistribution. The zips, which were submitted for drug testing, were later found to contain fentanyl, cocaine, and/or heroin.

The defendant was arrested, and on February 2, 2024, he was released following a detention hearing before the Honorable G. Michael Harvey. As a condition of his release, the defendant was ordered to participate in inpatient or outpatient substance abuse treatment as directed by the Pretrial Services Agency ("PSA"). *See* ECF No. 12. As detailed in the February 9, 2024, PSA status report, the defendant tested positive for cocaine, opiates, and fentanyl on February 5, 2024. *See* ECF No. 16. PSA recommended that the defendant participate in residential drug treatment and indicated that it was looking into treatment programs. *See Id*. On February 26, 2024, after the defendant indicated he would accept the government's pre-indictment plea offer, the United States filed a single count information, charging him with Conspiracy to Distribute and Possess with Intent to Distribute Fentanyl, in violation of 21 U.S.C. §§ 841 (a)(1), 841(b)(1)(C), and 846. ECF No. 17.

On February 27, 2024, PSA reported that the defendant had tested positive for narcotics on February 12, 2024 (fentanyl) and again on February 23, 2024 (fentanyl and cocaine). *See* ECF No. 19. PSA also indicated that the defendant had entered into residential drug treatment, which he was expected to complete on or about April 4, 2024. *See Id*. On March 5, 2024, PSA filed another status report, indicating that: 1) the defendant tested positive for narcotics twice more (on February 29 for cocaine, opiates, and fentanyl, and again on March 4 for cocaine and fentanyl); 2) the defendant absconded from residential drug treatment on February 28, 2024; and 3) the defendant appeared to have violated his release conditions, which imposed home detention, by leaving his residence on multiple occasions without authorization. *See* ECF No. 21.

On March 20, 2024, pursuant to a plea agreement, the defendant pled guilty to Count One

of the Information, charging him with Conspiracy to Distribute and Possess with Intent to Distribute Fentanyl, in violation of 21 U.S.C. §§ 841 (a)(1), 841(b)(1)(C), and 846. Pursuant to the terms of the plea agreement, and despite the violations of pretrial release, the United States noted that it was not seeking a change in his release conditions. In addressing the violations at the conclusion of the plea hearing, the defendant appeared to indicate that he did want drug treatment and that his abscondence was the result of an issue with treatment, which had since been resolved. Despite having been afforded the opportunity to remain on release by this Court and to receive such treatment, however, the defendant appears to have fared no better after pleading guilty.

Indeed, a PSA report filed on April 24, 2024 details a litany of additional violations, including failure to report for drug testing and to PSA as directed, multiple positive tests for various narcotics, and the defendant's continued violation of his home detention. *See* ECF No. 26. As a result of the violations, the defendant was arrested on or about May 1, 2024 and now remains held pending sentencing, which is currently scheduled for July 10, 2024.

## DISCUSSION AND RECOMMENDATION

### I.  Generally Applicable Legal Principles

When determining the appropriate sentence, the district court should consider all of the applicable factors set forth in 18 U.S.C. § 3553(a). See United States v. Gall, 128 S. Ct. 586, 596 (2007). The listed factors in 18 U.S.C. § 3553(a) include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
>    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>    (B) to afford adequate deterrence to criminal conduct;
>    (C) to protect the public from further crimes of the

>  defendant; and
>  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for –
>  (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
>   (i) issued by the Sentencing Commission ...; and
>   (ii) that, . . . are in effect on the date the defendant is sentenced; ...
>
> (5) any pertinent policy statement –
>  (A) issued by the Sentencing Commission ... and
>  (B) that, . . . is in effect on the date the defendant is sentenced.
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

## II. Defendant's Sentencing Guidelines Calculation

### A. Total Offense Level

The base offense level for a violation of 21 U.S.C. § 846 is governed by U.S.S.G. § 2D1.1. Because the defendant is accountable for less than four grams of fentanyl as the total amount involved in his relevant criminal conduct, the base offense level is 12. *See* U.S.S.G. § 2D1.1(a)(5) and (c)(14). As a result of the defendant's minimal role in the offense, as compared with others, the United States agrees that a four-level adjustment is warranted, pursuant to U.S.S.G. § 3B1.2(a). The defendant has also accepted responsibility for the offense, warranting a two-level reduction, pursuant to U.S.S.G. § 3E1.1(a). The total adjusted offense level is therefore 6.

### B. Criminal History Category

The PSR writer calculates the defendant to have a total of 3 criminal history points (placing him in Criminal History Category II). *See* PSR ¶ 54.

### C. Sentencing Guideline Range

With a total offense level of 6 and a Criminal History that falls in Category II, the defendant's guidelines range is 1-7 months of incarceration. The guidelines range for supervised release is 3 years. *See* U.S.S.G. § 5D1.2(a)(1) and (c). The guidelines range for a fine is $1,000 to $9,500. *See* U.S.S.G. § 5E1.2.

## III. Sentencing Recommendation

As stated above, the United States requests a sentence of six (6) months of incarceration, to be followed by three (3) years of supervised release.

### A. The Nature of the Offense

The nature of the offense is concerning, given that the defendant was part of a narcotics conspiracy that regularly and blatantly worked to push fentanyl into our community. The concrete harms posed by narcotics trafficking, both in terms of the attendant violent crime that often follows, as well as the costs of addiction, cannot, and should not, be minimized. The United States recognizes – as is reflected in the terms of the plea agreement – that the defendant's own participation in the offense, however, was limited and that he appears to have primarily facilitated the conspiracy by packaging narcotics for resale, rather than regularly selling narcotics himself. Nor is there any evidence that the defendant had access to, or a willingness to, engage in the trafficking of significant quantities of narcotics.

### B. The History and Characteristics of the Defendant

First, it should be noted that the defendant indicated early on that he wished to accept

6

responsibility for his conduct in the instant case and ultimately entered into a pre-indictment plea agreement. Although the defendant has four prior adult criminal convictions, none are recent. Indeed, because of its age, it appears that his prior conviction for Attempted Distribution of Cocaine/Possession of Cocaine in D.C. Superior Court case number 1990 FEL 14089 would not have received any criminal history points, were it not for his parole revocations. He was, however, arrested in 2020 for possession with intent to distribute heroin. Although he was not subsequently charged, this suggests that, notwithstanding the lack of recent criminal history, his conduct in the instant case is not an aberration.

According to the PSR, the defendant appears to have had the benefit of family support, including through prior employment at his father's company, and by his long term partner, with whom he shares a young child. It appears clear, however – both from the defendant's record on pretrial release in this case, as well as the probation and parole violations in 1990 FEL 140899 – that the defendant has had a lifelong substance abuse issue, which has not been mitigated despite prior substance abuse treatment.

### C. The Need for the Sentence Imposed

Given the defendant's history and characteristics and the nature of the conduct in this case, the United States respectfully requests a sentence of six (6) months of incarceration, to be followed by three (3) years of supervised release. A sentence at the higher end of the guidelines, which already account for the mitigating factors at play here (including the defendant's limited role), is necessary to promote respect for the law and provide adequate deterrence, particularly in light of the defendant's conduct while on pretrial release. It will also allow the defendant sufficient time to receive necessary substance abuse treatment, which he appears to have been unwilling or unable to participate in while on release. A period of supervised release is also appropriate and necessary

to facilitate the defendant's re-entry into the community upon his release from imprisonment, given his history of relapse.

         Respectfully submitted,

         MATTHEW M. GRAVES
         UNITED STATES ATTORNEY
         D.C. Bar No. 481052

By:

         */s/ Andrea Duvall*
         Andrea Duvall
         AR Bar 2013114
         Assistant United States Attorney
         U.S. Attorney's Office
         Violence Reduction & Trafficking Offenses
         601 D Street, NW
         Washington, D.C. 20530
         (202) 252- 2408
         andrea.duvall@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on July 2, 2024, a copy of the Government's Sentencing Memorandum was submitted via CM/ECF, which will transmit to counsel for defendant.

                                  */s/ Andrea Duvall*
                                  Assistant U.S. Attorney